1

2

3

4

5

6

7                             UNITED STATES DISTRICT COURT
                              WESTERN DISTRICT OF WASHINGTON
8                                        AT SEATTLE

9   GEORGET R. AYDELOTTE,

10                    Plaintiff,

11          v.                                          Case No. C14-307RSL

12  TOWN OF SKYKOMISH, *et al.*,                        ORDER GRANTING IN PART
                                                        MOTION FOR SUMMARY
13                    Defendants.                       JUDGMENT

14

15          This matter comes before the Court on "Defendants' Motion And Memorandum In

16  Support Of Summary Judgment Dismissal."  Dkt. # 34.  Having reviewed the parties'

17  memoranda and exhibits, the Court finds as follows.

18                                   **I.  BACKGROUND**

19          Plaintiff George Aydelotte brings this action under 42 U.S.C. § 1983, alleging that the

20  town of Skykomish, Washington ("the Town"), and certain Town officials, including the mayor,

21  building inspector, council members, and the clerk, harassed him and violated his constitutional

22  rights.  Dkt. # 23 (Am. Compl.).[1]  Plaintiff claims that defendants have harassed him in

23

24  ─────────────────────────
    [1]  In response to defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(e), Dkt. # 18, and this
25  Court's order on this motion, Dkt. # 14, plaintiff filed a "Clarification of Complaint" pursuant to Fed. R.
    Civ. P. 15(a)(1)(B), which the Court construes as an amended complaint.  Dkt. # 23.  Because an
26  amended complaint supercedes the original complaint, rendering it without legal effect, Lacey v.
    Maricopa Cnty., 693 F.3d 896, 927 (9th Cir. 2012), the Court relies on the Amended Complaint for the

27

28  ORDER GRANTING IN PART MOTION
    FOR SUMMARY JUDGMENT- 1

retaliation for and to prevent him from exercising his First Amendment rights and certain property rights.  Id.  He also contends that defendants have conspired to deprive him of his civil rights.  Id.  Specifically, plaintiff contends that he is being retaliated against for his efforts to compel Skykomish officials to disclose their finances and for putting political signs on his property.  Id. at 1, 5.  Defendants have moved for summary judgment.  Dkt. # 34.

## II.  LEGAL STANDARD

### A.    Summary Judgment

Summary judgment is appropriate if, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party, the moving party shows that "there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Torres v. City of Madera, 648 F.3d 1119, 1123 (9th Cir. 2011).  The moving party "bears the initial responsibility of informing the district court of the basis for its motion." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Where the nonmoving party will bear the burden of proof at trial, the moving party may meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the moving party has satisfied its burden, the nonmoving party must then set out "specific facts showing that there is a genuine issue for trial" in order to defeat the motion.  Id. at 324.  "The mere existence of a scintilla of evidence in support of the non-moving party's position" is not sufficient; this party must present probative evidence in support of its claim or defense.  Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

### B.    Actions Arising Under § 1983

In order to state a claim under § 1983, a plaintiff must allege that: (1) a right secured by the Constitution or federal law was violated by defendants, and (2) the alleged violation was committed by a person acting under color of state law.  See, e.g., Am. Mfrs. Mut. Ins. Co. v.

---

purposes of this Order.

ORDER GRANTING IN PART MOTION
FOR SUMMARY JUDGMENT- 2

1    Sullivan, 526 U.S. 40, 49-50 (1999).  Several constitutional rights and § 1983 doctrines have

2    been raised by the parties.

3                    **(1)    Maintaining Specific Types of § 1983 Claims**

4            To maintain a First Amendment retaliation claim, a plaintiff must show (1) that he

5    engaged in constitutionally-protected speech; (2) that defendants engaged in conduct that would

6    "chill a person of ordinary firmness from future First Amendment activity;" and (3) that

7    defendants' desire to chill his speech was the motivation for the allegedly-unlawful conduct.

8    Ford v. City of Yakima, 706 F.3d 1188, 1192 (9th Cir. 2013).  To maintain an equal protection

9    claim arising under the Fourteenth Amendment, a plaintiff must allege "unequal treatment of

10   people similarly situated." Gilbrook v. City of Westminster, 177 F.3d 839, 871 (9th Cir. 1999);

11   see Plyler v. Doe, 457 U.S. 202, 216 (1982) (equal protection requires that "all persons similarly

12   circumstanced shall be treated alike.").  A plaintiff may assert a "class of one" equal protection

13   claim where he alleges that he has intentionally been treated differently from others similarly

14   situated and that there is no rational basis for the difference in treatment.  Village of

15   Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  However, persuasive authority suggests that

16   claims that a plaintiff was retaliated-against and thus "treated differently" from others based on

17   the content of his speech are actually First Amendment claims that do not actually implicate the

18   Equal Protection Clause.  Kirby v. City Of Elizabeth City, N. Carolina, 388 F.3d 440, 447 (4th

19   Cir. 2004).

20          The Due Process Clause of the Fourteenth Amendment forbids the governmental

21   deprivation of substantive rights without constitutionally adequate procedure.  Shanks v. Dressel,

22   540 F.3d 1082, 1090-91 (9th Cir. 2008).  To support a procedural due process claim, a plaintiff

23   must establish the existence of (1) a liberty or property interest protected by the Constitution; (2)

24   a deprivation of the interest by the government; and (3) lack of process.  Id.  Substantive due

25   process violations occur when the state impermissibly deprives an individual of an interest so

26   fundamental, deprivation is prohibited regardless of the fairness of the procedures used.  Wood

27
28   ORDER GRANTING IN PART MOTION
     FOR SUMMARY JUDGMENT- 3

v. Ostrander, 879 F.2d 583, 589 (9th Cir. 1989). Substantive due process requires a showing of "egregious" government misconduct. Shanks v. Dressel, 540 F.3d 1082, 1088 (9th Cir. 2008). To establish a substantive due process claim against the government based on land use restrictions, a plaintiff must show government conduct that is clearly arbitrary and unreasonable. Cuyahoga Falls v. Buckeye Cmty. Hope Found., 538 U.S. 188, 198 (2003); see County of Sacramento v. Lewis, 523 U.S. 833, 845-46, (1998) (only "the most egregious official conduct" can be considered arbitrary in the "constitutional sense."). To maintain such a claim, the government action must "lack any rational relationship to the public health, safety, or general welfare." Crown Point v. Sun Valley, 506 F.3d 851, 855-56 (9th Cir. 2007).

To prove a § 1983 conspiracy claim, in addition to meeting the basic requirements for any other § 1983 claim, a plaintiff must show (1) that a defendant conspired with others to deprive him of a constitutional right; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff. Askew v. Millerd, 191 F.3d 953, 957 (8th Cir. 1999).

### (2)   Municipal Liability

A municipality may only be held liable for an official's unconstitutional conduct under § 1983 if such conduct was caused by a city policy or custom. Mennotti v. City of Seattle, 409 F.3d 1113, 1147 (9th Cir. 2005) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978)). It cannot be held liable for the acts of municipal employees under a respondeat superior theory. Monell, 436 U.S. at 691. To satisfy Monell, a plaintiff must show that a constitutional violation represented (1) an expressly adopted official policy; (2) a longstanding practice or custom; or (3) the decision of a person with final policymaking authority. Lytle v. Carl, 382 F.3d 978, 982 (9th Cir. 2004).[2] A municipality can be liable for an isolated constitutional violation by a "final policymaker." Id. at 983. However, a policymaker's knowledge of an unconstitutional act does

---

[2] The decision may also be made by a subordinate of the person with final policymaking authority if this person delegated authority to the subordinate or ratified the decision. Ulrich v. City and Cty. Of San Francisco, 308 F.3d 968, 984-85 (9th Cir. 2002).

ORDER GRANTING IN PART MOTION
FOR SUMMARY JUDGMENT- 4

1    not, by itself, constitute ratification; and a policymaker's mere refusal to overrule a subordinate's

2    contemplated act does not constitute approval.  See Christie v. Iopa, 176 F.3d 1231, 1239 (9th

3    Cir. 1999).  Whether an official has final policymaking authority is a question for the Court to

4    decide based on state law.  Id. at 1235.

5                    **(3)    Qualified Immunity**

6         Qualified immunity protects government officials from liability for civil damages insofar

7    as their conduct does not violate clearly established statutory or constitutional rights of which a

8    reasonable person would have known.  Pearson v. Callahan, 555 U.S. 223, 231 (2009).  In

9    analyzing this defense, the Court must determine: (1) whether a constitutional right would have

10   been violated on the facts alleged, taken in the light most favorable to the party asserting the

11   injury; and (2) whether the right was clearly established when viewed in the specific context of

12   the case.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  "The relevant dispositive inquiry in

13   determining whether a right is clearly established is whether it would be clear to a reasonable

14   officer that his conduct was unlawful in the situation he confronted."  Id. at 202.  While the

15   sequence set forth in Saucier is often appropriate, it is not mandatory, and the two prongs of the

16   Saucier test may be analyzed in either order.  Pearson, 555 U.S. at 236.

17                        **III.  DISCUSSION**

18   **A.    Motion To Strike Plaintiff's Exhibits and Part of Overlength Brief**

19        Defendants move to strike multiple exhibits that plaintiff submitted with his opposition

20   brief on several bases, including that plaintiff never attested that his declarations were based on

21   his personal knowledge as required by Fed. R. Evid. 602; that his various exhibits cannot be

22   authenticated as required by Fed. R. Evid. 901; that certain exhibits contain previously-

23   undisclosed expert witness opinions; and that multiple exhibits should be excluded as hearsay.

24   Dkt. # 37 (Defs. Reply) at 2.  Defendants also argue that plaintiff's brief exceeds the page

25   limitation of Local Civil Rule 7(e)(3) (which sets a 24-page limit for responses to motions for

26

27   ORDER GRANTING IN PART MOTION
28   FOR SUMMARY JUDGMENT- 5

summary judgment), and that plaintiff did not ask the Court's permission to file an overlength brief. Id.

Being a pro se litigant does not excuse plaintiff from complying with the Rules of Evidence, the Rules of Civil Procedure and the Rules of this Court. See, e.g., Guilfoyle v. Educ. Credit Mgmt. Corp., 2015 WL 1442689, at *3 (E.D. Cal. Mar. 27, 2015). Nevertheless, there is no prejudice to defendants in considering plaintiff's entire opposition brief, which (had its oversized text been properly formatted) would likely have fallen within the page limit. Furthermore, in response to defendants' hearsay objection, the Court's focus at the summary judgment stage is properly on the substance of the evidence proffered and not its form. See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents."). The Court therefore has considered the entirety of plaintiff's opposition brief and all proffered exhibits, and has considered his Complaint and brief evidence to the extent that they contain nonconclusory factual assertions that appear to be based on personal knowledge (consistent with Fed. R. Civ. P. 56(c)(4)).

## B.    Failure To Serve Multiple Defendants

Defendants argue that multiple defendants[3] should be dismissed because plaintiff has failed to serve them. Dkt. # 34 at 4. Fed. R. Civ. P. 4(m) states that if a defendant is not served within 120 days after the complaint is filed, the Court must dismiss the action without prejudice against that defendant or order that service be made within a specified time, unless the plaintiff shows good cause for the failure to serve. The Court finds that plaintiff has not shown good cause for failing to serve defendants. The Ninth Circuit has explained that "at a minimum" good cause means "excusable neglect." Boudette v. Barnette, 923 F.2d 754, 756 (9th Cir. 1991). Plaintiff claims that he did not serve certain defendants because an individual (not one of the

---

[3] Darrell Joselyn, Charlotte Mackner, Robert Mackner, Michael Descheemaeker, Michael Pierce, and Fred Brandt.

ORDER GRANTING IN PART MOTION
FOR SUMMARY JUDGMENT- 6

1    defendants) threatened to kill him if he continued filing lawsuits.  Dkt. # 36 (Pl. Opp.) at 14.

2    This bald allegation does not excuse failing to serve a defendant.[4]  Plaintiff has not argued that

3    he would be prejudiced by the dismissal of the defendants he admittedly has failed to serve.

4    These defendants will be dismissed without prejudice.  For the foregoing reasons, the Court

5    additionally dismisses Deborah Allegri, who has answered the Complaint but apparently has not

6    been served.  Dkt. # 33 (Answer) ¶¶ 23-24.

7            **C.    Claims Against Mayor Grider and Need for Further Briefing**

8            Plaintiff claims that his rights were violated by the unlawful ticketing and towing of his

9    vehicles from his private property.  Dkt. # 23 (Am. Compl.) at 2.  Specifically, plaintiff claims

10   that defendant Mayor Alan Grider ordered these actions despite defendants' knowledge that

11   plaintiff's vehicles were always on his private property.  Id.  Plaintiff alleges that Grider holds

12   animus against him because plaintiff requested that Grider disclose to him any payments Grider

13   had received from BNSF Railway, a request that Grider refused.  Id.; Dkt. # 36 at 26.  Plaintiff

14   alleges that when he informed Grider about the ticketings and towings and agreed to move his

15   vehicles closer to his property, Grider replied that plaintiff "would need to behave to continue to

16   live there."  Dkt. # 23 (Am. Compl.) at 3.  The ticketings and towings allegedly continued.  Id.

17   Plaintiff asserts a "right to be secure in his private property guaranteed in the Fourth

18   Amendment."  Dkt. # 23 (Am. Compl.) at 3.  Defendants have not shown that the vehicles at

19   issue were illegally parked or offered any explanation for the towings.  There appear to be

20   genuine fact issues surrounding the limits of plaintiff's property, the existence and location of an

21   adjacent right of way, and the location of plaintiff's vehicles at the times they were ticketed and

22

23

---

24   [4] While all defendants may have received notice of this suit, that in itself does not mean that Rule 4(m)
     need not be enforced.  See McClain v. 1st Sec. Bank of Washington, 2014 WL 7043474, at *2 (W.D.
25   Wash. Dec. 11, 2014) ("The Court's ability to liberally construe Rule 4 is limited by its inability to
     waive procedural defects where plaintiff has not demonstrated his substantial compliance with the
26   requirements for effecting service.").

27   ORDER GRANTING IN PART MOTION
28   FOR SUMMARY JUDGMENT- 7

towed; neither party has proffered probative evidence on these issues.[5]  There are § 1983 cases

where mayors have been found responsible for the punitive ticketing of plaintiffs' vehicles.

Garcia v. City of Trenton, 348 F.3d 726, 729 (8th Cir. 2003).  In addition, impounding a vehicle

is a seizure which implicates the owner's Fourth Amendment rights.  See Miranda v. City of

Cornelius, 429 F.3d 858, 862 (9th Cir. 2005).

 Plaintiff also claims that Grider once refused plaintiff entry to a public meeting

concerning "the condemnation of plaintiff's property" while allowing others to enter, keeping

plaintiff waiting in 20-degree weather until just when the meeting began.  Dkt. # 23 at 2; Dkt. #

36 at 22.  Plaintiff also claims that defendants unlawfully demolished a fence on his property.

Dkt. # 36 at 18, 28.  Plaintiff proffers emails indicating that Grider told him that building the

fence would be illegal, Dkt. # 36-11, and claims that Town employee Fred Brandt subsequently

destroyed it, Dkt # 36 at 28; this and the foregoing suggests Grider's involvement in the decision

to demolish the fence.  Defendants have made no argument concerning the location of the fence

or identified the ordinance it violated, and have not directly argued whether the destruction of

the fence was arbitrary.  Defendants also have not argued whether plaintiff's communications

with Grider and others about the fence prior to its destruction satisfied the requirements for

procedural due process.

Defendants describe the standard for qualified immunity and state that the doctrine

compels the Court to dismiss this case, but never explain exactly how the doctrine applies or

which defendants it protects from which claims.  Dkt. # 34 at 5-7.  The Court finds additional

briefing on the qualified immunity issue is necessary to determine whether this doctrine shields

Grider from plaintiff's claims.

Defendants also argue in their reply brief that "some" of plaintiff's causes of action are

barred by res judicata.  Dkt. # 37 at 5-6.  The King County Superior Court entered summary

---

[5] Plaintiff has submitted an excerpt from a land survey of his property.  Dkt. # 39.  However, the Court
cannot determine any of the above from what plaintiff has proffered.

ORDER GRANTING IN PART MOTION
FOR SUMMARY JUDGMENT- 8

judgment against plaintiff in an action where plaintiff claimed that the Town retaliated against him by destroying his garage.  This judgment was affirmed on appeal.  <u>Aydelotte v. Town of Skykhomish</u>, 186 Wn. App. 1027 (2015) (unpublished).  Defendants are unclear about exactly which of plaintiff's current claims (against which defendants) are therefore precluded.  More importantly, this argument was raised for the first time on reply, and thus plaintiff lacked the opportunity to respond.  <u>See</u> <u>Zamani v. Carnes</u>, 491 F.3d 990, 997 (9th Cir. 2007) (district courts need not consider arguments raised for the first time in a reply brief).  Both qualified immunity and res judicata should be further briefed before this Court rules on defendants' motion with respect to plaintiff's claims against Mayor Grider.

### D.    Allegations Concerning Plaintiff's Signs

Plaintiff claims that in October 2013 the Town unlawfully ordered him to remove signs from his property that expressed his views.  An October letter from Mayor Grider and a Complaint from the Town (authored by building inspector Descheemaeker) ordered plaintiff to remove or obtain permits for certain signs on his property on the grounds that they violated the Skykomish sign code and other codes "regulating illegal signs in public right of ways."  Dkt. # 36-27 (Letter); Dkt. # 24-2 (Town Complaint) at 2 (noting spray-painted signs for which plaintiff did not obtain permits).

Plaintiff cannot maintain a First Amendment retaliation claim against defendants for the above actions.  Assuming that ordering plaintiff twice to remove these signs would suffice to chill an ordinary person from keeping political signs on their property, plaintiff must show evidence of a retaliatory motive to support such a claim.  While plaintiff argues that all of the conduct alleged in the Complaint was retaliatory, his failure to obtain permits for his signs appears to clearly run afoul of the Skykhomish sign code.  SMC § 18.50.  Defendants are entitled to summary judgment on plaintiff's claims with respect to his signs.

ORDER GRANTING IN PART MOTION
FOR SUMMARY JUDGMENT- 9

1

### E.    Other Allegations

2    Plaintiff alleges that the Town (and specifically Town employee and non-defendant

3    David Childs) placed rocks in "the center of" a public right of way in front of his property,

4    thereby diverting traffic onto his property.  Dkt. # 36 at 30.  The photos that plaintiff attaches as

5    exhibits in support of this claim show rocks being placed on the lawn in front of the house across

6    the street from plaintiff's property, adjacent to (but not on) the roadway between them.  The

7    Court fails to see how this rock placement would force traffic onto plaintiff's property.  If

8    plaintiff is arguing that travel on the roadway constitutes a trespass because his property line

9    actually extends into the roadway, this is entirely unclear from his briefing and exhibits,[6] and in

10   any event plaintiff provides no support for this proposition.  Furthermore, plaintiff proffers no

11   evidence suggesting that this was done under color of law or pursuant to municipal policy.  To

12   the extent that plaintiff is arguing that this incident (not mentioned in the Complaint) gives rise

13   to a due process or retaliation claim, the Court disagrees.

14   Plaintiff's briefing alleges conduct not mentioned in the Amended Complaint (i.e., that

15   defendants piled debris on plaintiff's property) and post-dating the Amended Complaint (i.e.,

16   that defendants carried-out a demolition on his property in July 2014).  Dkt. # 36.  Some of

17   plaintiff's new allegations concern conduct that cannot give rise to a cause of action due to the

18   three-year statute of limitations for bringing § 1983 claims,[7] such as his allegation that he was

19   threatened in 2006 and that the Town destroyed his sailing dinghy in 2008.  Id.  The Court

20   disregards these allegations to the extent that plaintiff attempts to assert that they give rise to

21   separate claims, and they do not affect the Court's ruling on this motion regardless of whether

22

23   _____
     [6] Plaintiff has apparently painted a line in the middle of the road with the words "No Trespassing"
     immediately underneath, Dkt. # 24-2 at 2, Dkt. # 36-7 at 1; and an email from plaintiff's surveyor
24   indicates that plaintiff's property line extends into the roadway, Dkt. # 36-2.  However, plaintiff states
     that he erected a fence to "mark known and established property boundaries," and that the "property
25   fence corner" was "not in [a] traveled roadway."  Dkt. # 36 at 28.
     [7] The appropriate statute of limitations for a § 1983 claim is the forum state's statute of limitations for
26   tort actions.  Wilson v. Garcia, 471 U.S. 261, 269 (1985).  Washington provides a three-year statute of
     limitations for tort claims.  RCW § 4.16.080(2).

27

28   ORDER GRANTING IN PART MOTION
     FOR SUMMARY JUDGMENT- 10

1   the Court considers or disregards them as evidence supporting plaintiffs' retaliation claim.  The

2   Court does not reach plaintiff's allegations against those defendants who have been dismissed

3   without prejudice pursuant to Rule 4(m), except to find that none of these allegations provide a

4   basis for municipal liability, for the reasons provided below.

5       **F.    Municipal Liability**

6           None of plaintiff's allegations and evidence suffice to establish municipal liability as to

7   the Town.  Plaintiff has not connected the conduct alleged in the Complaint to an official Town

8   policy or to a longstanding custom or practice, and thus plaintiff can only satisfy Monell liability

9   by showing that a violation was carried-out pursuant to the decision of a person with "final

10  policymaking authority."  The final authority with respect to all of the alleged violations relating

11  directly or indirectly to the use of plaintiff's property appears to be the Town Council, and not

12  any individual defendant such as the mayor or building inspector.  For example, the October

13  2013 Town Complaint concerning plaintiff's sign code violations, which also ordered the

14  demolition of plaintiff's garage and the removal of plaintiff's work trailer and other items from a

15  right of way, was authored by building inspector Descheemaeker, Dkt. # 24-2 (Town

16  Complaint), whose decisions are appealable to the Town Council under SMC § 15.25.100.  The

17  most persuasive reading of Supreme Court precedent is that when a municipal employee's

18  decision is subject to review by other policymakers, the latter are the higher authority, and the

19  former's decision generally cannot expose a municipality to Monell liability.  See Carr v. Town

20  of Dewey Beach, 730 F. Supp. 591, 606-07 (D. Del. 1990) (interpreting City of St. Louis v.

21  Praprotnik, 485 U.S. 112 (1988)) (neither mayor nor building inspector were final policymakers

22  with respect to issuing stop work letters).  The Court finds no support for identifying the mayor

23  or any other named defendant the final policymaking authority with respect to any alleged

24  violation, and finds no probative evidence connecting any alleged violation to a Town Council

25  decision.  The Court finds no basis for Monell liability.

26

27

28  ORDER GRANTING IN PART MOTION
    FOR SUMMARY JUDGMENT- 11

1

### G.     Claims Against Remaining Defendants

2       Plaintiff makes allegations concerning several individuals not employed by the Town

3  whose alleged conduct would not have fallen under color of authority (i.e., Ursula Dorgan,

4  Catherine Dansz); these individuals must be dismissed.  Plaintiff also makes allegations against

5  individuals he never named as defendants in the Complaint and presumably were not served (i.e.,

6  Jennifer Childs), see Dkt. # 1.[8]  While plaintiff suggests that other defendants conspired with or

7  acted through these individuals to deprive plaintiff of his rights, Dkt. # 23 (Am. Compl.) at 7;

8  Dkt. # 36 at 8-12, the Court finds these allegations unsupported.  Plaintiff's claims against the

9  remaining defendants, under the First Amendment or any other theory, are similarly unsupported

10 and fail accordingly.[9]

11      ### H.     Conspiracy Claims

12      Consistent with its previous order in this case, Dkt. # 29 at 6, the Court finds that plaintiff

13 has not presented probative evidence of any "agreement or meeting of the minds" by any

14 defendants to violate any of his rights.

15                      ### IV.  CONCLUSION

16      Defendants' motion for summary judgment is GRANTED IN PART.  Dkt. # 34.  All

17 defendants are DISMISSED with the exception of Alan Grider.  Defendants Darrell Joselyn,

18 Robert and Charlotte Mackner, Michael Descheemaeker, Michael Pierce, Fred Brandt and

19

20 _____

[8] Because the Court does not consider David and Jennifer Childs to be defendants in this case, they need
not be dismissed.

21 [9] For example, plaintiff accuses Councilman Kevin Weiderstrom of falsely reporting to the King County
Deputy Sheriff that plaintiff was parking on town land.  Dkt. # 23 at 6.  The Court finds insufficient
22 evidence that Weiderstrom had retaliatory intent towards plaintiff to support a First Amendment claim.
Plaintiff submits excerpts from a heated online exchange between himself and Weiderstrom in support
23 of his claim, but even construed in plaintiff's favor they do not support allegations of retaliatory animus.
Furthermore, there is no allegation that Weiderstrom ordered a ticketing or towing, and thus the Court
24 finds no evidence of conduct taken under color of law that deprived plaintiff of his rights.  See Ragasa v.
Cnty. of Kauai, 2006 WL 753021, at *6 (D. Haw. Mar. 22, 2006) (public employee does not violate §
25 1983 merely by making false reports to police where this act is not unrelated to the performance of his
public duties).

26

27

28 ORDER GRANTING IN PART MOTION
FOR SUMMARY JUDGMENT- 12

Deborah Allegri are DISMISSED WITHOUT PREJUDICE; defendants Crystal Grider, Kevin

Weiderstrom, Ursula Dorgan, Michael and Debra Jansz and the Town of Skykomish are

DISMISSED WITH PREJUDICE.  Summary judgment is GRANTED with respect to plaintiff's

claims with respect to his signs.  The Court defers ruling on plaintiff's remaining claims against

Alan Grider pending further briefing from the parties on whether these claims are barred by (a)

qualified immunity or (b) res judicata.  By Wednesday, July 8, 2015, defendants may file

additional briefing not to exceed 10 pages on these two issues.  Plaintiff may respond by no later

than Monday, July 13, 2015; plaintiff's response brief may not exceed 10 pages.  Defendants

may reply by Friday, July 17, 2015; defendants' reply may not exceed 5 pages.


        DATED this 29th day of June, 2015.


                                        _MWS Casnik_
                                        Robert S. Lasnik
                                        United States District Judge


ORDER GRANTING IN PART MOTION
FOR SUMMARY JUDGMENT- 13