UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GEORGE R. AYDELOTTE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>TOWN OF SKYKOMISH, *et al.*,<br><br>　　　　Defendant. | NO. C14-307RSL<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON REMAINING CLAIMS |

This matter comes before the Court on "Defendants' Motion and Memorandum in Support of Summary Judgment Dismissal." Dkt. # 34. The Court granted defendants' motion in part and requested additional briefing on the remaining claims. Dkt. # 40. Having reviewed the parties' original and supplemental memoranda and exhibits, and the remainder of the record, the Court finds as follows.

## I. BACKGROUND

Plaintiff George Aydelotte brings this action under 42 U.S.C. § 1983, alleging that the town of Skykomish, Washington, and certain Skykomish officials harassed him and violated his constitutional rights. Dkt. # 23 (Am. Compl.). Defendants moved for summary judgment on all claims. Dkt. # 34. The Court granted defendants' motion in part. Dkt. # 40. Specifically, the Court dismissed all defendants except Alan Grider, Mayor of Skykomish, and ordered further briefing regarding whether the claims against Grider are barred by qualified immunity or res judicata. Id. at 13.

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 1

The remaining claims against Grider are for violations of Aydelotte's constitutional rights for allegedly: 1) refusing Aydelotte entry to a public meeting regarding condemnation of Aydelotte's property; 2) ticketing and threatening to tow Aydelotte's vehicles while they were on his property; and 3) ordering the demolition of a fence on Aydelotte's property. Dkt. # 23 at 2-3 (Am. Compl.).

## II. LEGAL STANDARD

The Court set forth the relevant legal standards in its June 29, 2015, Order. Dkt. # 40. For the ease of the reader, the relevant standards are repeated here.

### A.   Summary Judgment

Summary judgment is appropriate if, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party, the moving party shows that "there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Torres v. City of Madera, 648 F.3d 1119, 1123 (9th Cir. 2011). The moving party "bears the initial responsibility of informing the district court of the basis for its motion." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party will bear the burden of proof at trial, the moving party may meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the moving party has satisfied its burden, the nonmoving party must then set out "specific facts showing that there is a genuine issue for trial" in order to defeat the motion. Id. at 324. "The mere existence of a scintilla of evidence in support of the non-moving party's position" is not sufficient; this party must present probative evidence in support of its claim or defense. Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

### B.   Actions Arising Under § 1983

In order to state a claim under § 1983, a plaintiff must allege that: (1) a right secured by the Constitution or federal law was violated by defendants, and (2) the alleged violation was

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 2

committed by a person acting under color of state law.  See, e.g., Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).  Several constitutional rights and § 1983 doctrines have been raised by the parties.

### 1.     Maintaining Specific Types of § 1983 Claims

To maintain a First Amendment retaliation claim, a plaintiff must show (1) that he engaged in constitutionally-protected speech; (2) that defendants engaged in conduct that would "chill a person of ordinary firmness from future First Amendment activity;" and (3) that defendants' desire to chill his speech was the motivation for the allegedly-unlawful conduct. Ford v. City of Yakima, 706 F.3d 1188, 1192 (9th Cir. 2013).

To maintain an equal protection claim arising under the Fourteenth Amendment, a plaintiff must allege "unequal treatment of people similarly situated." Gilbrook v. City of Westminster, 177 F.3d 839, 871 (9th Cir. 1999); see Plyler v. Doe, 457 U.S. 202, 216 (1982) (equal protection requires that "all persons similarly circumstanced shall be treated alike.").  A plaintiff may assert a "class of one" equal protection claim where he alleges that he has intentionally been treated differently from others similarly situated and that there is no rational basis for the difference in treatment.  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  However, persuasive authority suggests that claims that a plaintiff was retaliated-against and thus "treated differently" from others based on the content of his speech are actually First Amendment claims that do not actually implicate the Equal Protection Clause.  Kirby v. City Of Elizabeth City, N. Carolina, 388 F.3d 440, 447 (4th Cir. 2004).

The Due Process Clause of the Fourteenth Amendment forbids the governmental deprivation of substantive rights without constitutionally adequate procedure.  Shanks v. Dressel, 540 F.3d 1082, 1090-91 (9th Cir. 2008).  To support a procedural due process claim, a plaintiff must establish the existence of (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process.  Id.  Substantive due process violations occur when the state impermissibly deprives an individual of an interest so

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 3

fundamental, deprivation is prohibited regardless of the fairness of the procedures used. Wood v. Ostrander, 879 F.2d 583, 589 (9th Cir. 1989). Substantive due process requires a showing of "egregious" government misconduct. Shanks v. Dressel, 540 F.3d 1082, 1088 (9th Cir. 2008). To establish a substantive due process claim against the government based on land use restrictions, a plaintiff must show government conduct that is clearly arbitrary and unreasonable. Cuyahoga Falls v. Buckeye Cmty. Hope Found., 538 U.S. 188, 198 (2003); see County of Sacramento v. Lewis, 523 U.S. 833, 845-46, (1998) (only "the most egregious official conduct" can be considered arbitrary in the "constitutional sense."). To maintain such a claim, the government action must "lack any rational relationship to the public health, safety, or general welfare." Crown Point v. Sun Valley, 506 F.3d 851, 855-56 (9th Cir. 2007).

### 2. Qualified Immunity

Qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Pearson v. Callahan, 555 U.S. 223, 231 (2009). In analyzing this defense, the Court must determine: (1) whether a constitutional right would have been violated on the facts alleged, taken in the light most favorable to the party asserting the injury; and (2) whether the right was clearly established when viewed in the specific context of the case. Saucier v. Katz, 533 U.S. 194, 201 (2001). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. While the sequence set forth in Saucier is often appropriate, it is not mandatory, and the two prongs of the Saucier test may be analyzed in either order. Pearson, 555 U.S. at 236.

### III. DISCUSSION

The Court finds that the remaining claims against Grider are barred by qualified immunity, as discussed in more detail below.

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 4

### A.  Public Meeting

Aydelotte alleged that Grider refused to grant him entry to a public meeting regarding the condemnation of Aydelotte's property. Dkt. # 23 at 2. The undisputed facts, however, establish that although Aydelotte was not allowed to enter the building before the meeting started, he attended the meeting and was present when it started. Dkt. # 38 at 15 (Transcript of January 29, 2015, Deposition of George Aydelotte). Under the first prong of the Saucier test, the Court determines whether a constitutional right would have been violated, taking the facts alleged in the light most favorable to plaintiff. 533 U.S. at 201. Aydelotte's brief exclusion from the building prior to the meeting did not violate his constitutional rights, and thus this claim is barred by qualified immunity.

### B.  Disputes Relating to Aydelotte's Property Line Dispute

Aydelotte's remaining two claims – that Grider ordered that Aydelotte's vehicles be ticketed and towed and ordered that Aydelotte's fence be destroyed – stem from a dispute over the boundaries of Aydelotte's property. Aydelotte claims that a property survey he commissioned establishes that his property line extends into the Town of Skykomish's public right-of-way, River Drive West, and that Grider was aware of the conflicting claims to the property. See Dkt. ## 36-2, 36-3, 36-11, 36-12, 36-39. Nothing in the record suggests that the dispute over this property has been resolved in favor of Aydelotte or the Town of Skykomish.

#### 1.  Ticketing and Threatened Towing of Aydelotte's Vehicles

The evidence shows that Grider and a Deputy with the King County Sheriff placed notices on Aydelotte's vehicles informing him that they were parked on town property and would need to be moved to avoid being towed at his expense. See Dkt. ## 36-27, 42 ¶ 7, 43-5, 45-3. There is no evidence that the vehicles were parked on property that undisputably belonged to Aydelotte, that the vehicles were towed, or that Aydelotte was issued a citation that resulted in a penalty of any kind. Aydelotte does not have a clearly-established constitutional right to park his vehicles on property that is the subject of a dispute and that the Town of Skykomish uses as a

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 5

right-of-way.  Therefore, under the second prong of the Saucier test, 533 U.S. at 201, Grider is entitled to qualified immunity on Aydelotte's claims regarding the ticketing and threatened towing of his vehicles.

### 2. Demolition of Aydelotte's Fence

The evidence also shows that Aydelotte intended to build a fence just inside of his claimed property line, which covered a portion of the area used as a right-of-way by the Town of Skykomish.  See Dkt. ## 36-4, 36-29, 36-39.  Grider informed Aydelotte that the temporary fencing on the Town right-of-way would have to be removed and directed Town of Skykomish employees to move Aydelotte's fencing off the Town right-of-way.  Dkt. # 42 ¶¶ 4-6, 12. Aydelotte does not have a clearly-established constitutional right to erect fencing on property that is the subject of a dispute and that the Town of Skykomish uses as a right-of-way. Therefore, under the second prong of the Saucier test, 533 U.S. at 201, Grider is entitled to qualified immunity on Aydelotte's claims regarding the removal of fencing on the Town right-of-way.

### III. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED on the claims remaining against defendant Grider.  The Court's June 29, 2015, Order, Dkt. # 40, granted summary judgment for defendants on all other claims.  The Clerk of Court is directed to enter judgment against plaintiff and in favor of defendants.

DATED this 13th day of October, 2015.

*[signature]*
Robert S. Lasnik
United States District Judge

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 6