The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GEORGE R. AYDELOTTE,

               Plaintiff,

    v.

TOWN OF SKYKOMISH, et al.,

               Defendants.

No. 2:14-CV-00307 MJP

AMENDED COMPLAINT

**JURY DEMAND**

## AMENDED COMPLAINT

Plaintiff George "Rick" Aydelotte, by and through his appointed counsel, brings this action against Defendants Town of Skykomish, Mike Descheemaeker, and Alan "Tony" Grider, and alleges as follows:

### NATURE OF THE ACTION

1. This is an action for money damages and injunctive relief brought pursuant to 42 U.S.C. § 1983 and the First Amendment to the United States Constitution against Alan Grider and Mike Descheemaeker, in their individual and official capacities, and against the Town of Skykomish under *Monell v. Department of Social Services*, 426 U.S. 658 (1978).

2. Plaintiff Aydelotte alleges that Defendants Grider and Descheemaeker (collectively, the "Individual Defendants") violated his constitutional rights under the First Amendment by

retaliating against him for his efforts to petition the government and to express his political opinion. The Individual Defendants used their official positions in the Town of Skykomish government to punish and bully Aydelotte for his protected speech over the course of several years, and they created an environment in which other Town employees joined in this mistreatment of Aydelotte. Taken together, the various abuses by the Individual Defendants are enough to discourage a reasonable individual from engaging in speech activity like Aydelotte's.

3.      The Town of Skykomish, a municipality, fostered this retaliation against Aydelotte. Defendant Grider, as mayor of Skykomish, was the highest policymaker during the primary events giving rise to this Complaint. Under his authority, the Town enabled abuses by the named officials and others against Aydelotte. Before Grider, Mayors Charlotte Mackner and Fred Black fostered an environment of harassment against Aydelotte. Similarly, Defendant Descheemaeker was the highest decision-maker with respect to his jurisdiction as Building Inspector in 2013. Under his authority, the Town targeted Aydelotte through Aydelotte's efforts to improve his property, in retaliation for Aydelotte's political speech. This pattern of mistreatment is sufficient to discourage a reasonable individual from engaging in speech activity, including petitioning the government.

## JURISDICTION AND VENUE

4.      Aydelotte is a resident of the State of Washington. At times relevant to this Complaint, Aydelotte lived in Skykomish, Washington. He now resides in Oak Harbor, Washington.

5.      At times relevant to the Complaint, Defendants Grider and Descheemaeker were officers of Skykomish. Defendant Grider served as the mayor of Skykomish between approximately 2012 and 2019. Defendant Descheemaeker served as the Skykomish Building Inspector in 2013, when certain events outlined in this Complaint occurred. Defendants Grider

AMENDED COMPLAINT - 2
(Case No. 2:14-cv-00307-MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1  and Descheemaeker lived in or near Skykomish, Washington at all times relevant.  Upon

2  information and belief, the Individual Defendants continue to reside in Washington.

3  6.    This Court has jurisdiction under 21 U.S.C. § 1331, as this case arises under 42 U.S.C.

4  § 1983.

5  7.    Venue is proper in the Western District of Washington, as the events subject to this case

6  took place in that district.

7
                                    **FACTS**

8
9  8.    Aydelotte lived in Skykomish, Washington since 1989.  He owns a home there, as well

10  as an additional residential property which he rented for some of the period at issue in this case.

11  Aydelotte chose to move to Skykomish because of its close proximity to Stevens Pass.  He is an

12  avid skier and relished living ten minutes from some of the best powder snow in the nation.

13  9.    In 2005, Aydelotte began investigating corruption in the Town of Skykomish

14  government.  In particular, Aydelotte believed that certain government officials had received

15  and failed to disclose individual settlement payments from a lawsuit between residents of

16  Skykomish, the Town of Skykomish, and the Burlington Northern Railroad Company relating

17  to pollution from the railroad.

18
19  10.   Aydelotte believed this failure to disclose settlement payments was of critical

20  importance, as these same government officials voted to approve Burlington Northern's

21  settlement with the town as a whole.  Aydelotte believed this settlement provided for

22  insufficient payments by Burlington Northern for environmental remediation in public spaces,

23  including at the local school.  Aydelotte was concerned that the vote of these government

24  officials had in effect been bought by Burlington Northern, and that the Town of Skykomish

25  had not received enough.

26
27

AMENDED COMPLAINT - 3
(Case No. 2:14-cv-00307-MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

11.     Aydelotte attempted to obtain this information through the Town of Skykomish government.  At meetings of the Town Council, Aydelotte asked councilmembers to disclose any payments that they received as part of the settlement with Burlington Northern.  Aydelotte also raised this issue at a public meeting with the Washington State Department of Ecology.

12.     When Skykomish officials failed to disclose payments voluntarily, Aydelotte petitioned the government to require the disclosure he requested.  Aydelotte filed an official complaint with the Washington Public Disclosure Commission seeking disclosure of the personal finances of individual Skykomish officials.  On April 7, 2006, the Public Disclosure Committee ordered all Skykomish elected officials to file financial disclosures.

13.     After Aydelotte's action before the Public Disclosure Committee, his relationship with the Town of Skykomish and several key officials rapidly deteriorated.  Skykomish officials engaged in a concerted effort lasting many years to harass Aydelotte in retaliation for his efforts to obtain information about the settlements and other First Amendment activity.  The initial retaliation took place under the tenure of former mayors Charlotte Mackner and Fred Black and continued through the filing of Aydelotte's initial Complaint in this case.  Mayor Grider, the highest policymaker for the Town of Skykomish starting in 2012, participated in these activities, as did Descheemaeker during his tenure as building inspector in 2013.

14.     The first incident of retaliation occurred only three days after the Public Disclosure Commission ordered all Skykomish officials to submit financial disclosures.  At a meeting of the Skykomish Town Council, Councilman Darrell Joselyn threatened Aydelotte, stating that "there will be a lot of flat tires" in Skykomish.  Joselyn looked at Aydelotte when he made this comment, and the comment was in the course of the Council's discussion of the required financial disclosures, indicating the connection between Joselyn's threat and Aydelotte's First Amendment activity.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

15.     Using the now-disclosed information about the rich individual settlements received by Skykomish officials from Burlington Northern, Aydelotte filed a lawsuit to overturn the settlement agreement between Burlington Northern and the Town of Skykomish on August 21, 2008, in King County Superior Court.

16.     On March 16, 2011, the court issued an order reversing the settlement agreement between Skykomish and the railway.  In the decision, the court concluded that Skykomish officials had a beneficial interest in the settlement agreement with Burlington Northern and received compensation from that settlement.  The court also held that Mayor Macker, Town Councilman Henry Sladek, and Town Councilman Joselyn violated the Municipal Officer's Code of Ethics, RCW 42.23, because they each had a private financial interest in the settlement agreement that was not disclosed when they voted on it, nor did the officials recuse themselves.

17.     The fallout from the King County Superior Court decision was immediate.  Shortly after the decision, on April 3, 2011, Wendy Dorgan, Councilman Joselyn's wife, posted on Facebook referencing Aydelotte's advocacy regarding corruption in the Skykomish government and stating "I HAVE ONLY JUST STARTED WITH YOU.  YOU HAVE ANGERED ME TO THE WORST. . . .  YOU HAVE PUSHED ME WAY TOO FAR."

18.     This was not the only time that members of Skykomish government and their families took to Facebook to attack Aydelotte.  Following a statement by Aydelotte calling for the disincorporation of Skykomish due to corruption on the school board, Planning Commission member Michael Pierce posted that Aydelotte should stop with his petitions for disclosure, noting that "I have NO idea where you get your information about the school board but you are wrong.  PLEASE work at getting your head out of you ASS and become an asset to this town or pack up and move someplace where people will care what you write because WE don't."  Dorgan also posted a message:  "YOU ARE EITHER OVER-TAKING YOUR CRACK

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

DOSES OR YOU ARE JUST GOOFY… OF MAYBE BOTH… BUT LEAVE THIS VALLEY, THIS TOWN, YOU ARE NOT NEEDED NOR WANTED. . . .  GET A GRIP & GET ON WITH YOUR LIFE SOMEWHERE ELSE, SKYKOMISH, I'M ALMOST SURELY WILL BE JUST FINE WITHOUT YOU."

19.    Meanwhile, as was his right, Aydelotte continued to petition the Skykomish government for certain information related to the potential corruption of Skykomish officials. For example, on January 19, 2011, Aydelotte wrote a request to the Skykomish School Board and Superintendent, seeking disclosure of all agreements, settlements, contracts, or other payments between Board members and Burlington Northern or the Washington State Department of Ecology.  Nearly all members of the Skykomish School Board ignored this request and did not disclose relationships with Burlington Northern.

20.    A fire then occurred at Aydelotte's property located at 305 West River Drive in August 2011, destroying the residence on that property.  Aydelotte planned to rebuild this residence, and he informed Descheemaeker of his plans.  Descheemaeker told Aydelotte that Aydelotte would not be able to obtain a permit.  To the contrary, Descheemaeker told Aydelotte that he "w[ould] be treated like Dieter Benz," a Skykomish property owner whose building was condemned after the town denied various building permits.

21.    Because construction would not take place for some time due to the permitting process, Aydelotte put up fencing using recycled steel roofing to secure the site until construction would begin.  Aydelotte heard that some children had been playing near the burned structure, and he wanted to ensure that no one entered the property, which could be dangerous.

22.    Aydelotte emailed Grider regarding his desire to construct a fence on his property on May 15, 2013.  Grider responded that no permit was necessary for Aydelotte's planned fencing project.  After first constructing a temporary barrier, Aydelotte informed Grider of his plan to

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

move forward with a permanent fence on his property, in accordance with his prior communication with Grider, on November 23, 2013.

23.     Before moving forward with construction, Aydelotte ascertained his property limits with a survey by Jim McDaniel from Harmsen & Associates, Inc.  Aydelotte's survey indicated that his property line extends into the paved area constituting a public roadway in front of Aydelotte's property.  Aydelotte informed Skykomish of this discrepancy.  The dispute regarding Aydelotte's property boundaries remains ongoing.

24.     Cognizant of the issues regarding his property line, Aydelotte constructed a fence well within his property, without disturbing the public roadway.  Despite having been informed of, and approving, Aydelotte's fence, Skykomish took action to destroy it almost immediately after Aydelotte began construction.  On December 9, 2013, town backhoes were used to demolish the fence that Aydelotte was building.  Upon information and belief, Grider authorized the demolition.

25.     After demolishing Aydelotte's fence, Skykomish officials took further action to impede Aydelotte's enjoyment of his private property.  In January 2014, Skykomish employees placed large rocks from a neighboring property onto West River Drive, directly in front of Aydelotte's property.  Vehicles driving on West River Drive were thus diverted onto Aydelotte's property, a trespass and violation of Aydelotte's enjoyment of his private property.

26.     Lest there be any doubt that the actions against Aydelotte related to his speech activity, Skykomish officials also specifically targeted Aydelotte's political expression, including with respect to political signs on Aydelotte's property.  Aydelotte first painted signs on a storage container on his property referencing his requests for disclosure of the payments between Burlington Northern and Skykomish officials.  The storage container messages included the question "How much was [former mayor] MACKNER PAID?" and statements that certain

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

town officials "SOLD OUT." These statements continued Aydelotte's First Amendment activity speaking out about the corruption he saw in Skykomish.

27.    Aydelotte's storage container signs drew the ire of Skykomish officials. Pierce, who served on the Planning Commission, posted on Facebook: "I can't believe that anyone that lives in this town would support you in anyway, shape or form. . . . Also there is a NEW container ordinance that is now on the books of the Town and when he is served notice he will have 120 days to move his container or it will be moved by the Town at his expense." Three minutes later, Pierce published a second post: "P.S. Hey Rick, please post the information you have about the Pierce's taking money from the railroad. Sounds like you are just blowing smoke out of your ASS, but that is not possible account your HEAD is in the way." Evidently, Pierce viewed the new container ordinance to relate to Aydelotte's advocacy.

28.    In late 2012 or early 2013, Aydelotte put up additional signs on the property parcel where the fire occurred, using the steel fencing that he erected as well as other materials. He added more signs over the course of several months' time. These signs criticized town officials for Aydelotte's treatment and for their actions in receiving money from the Burlington Northern settlement agreement, without disclosing those payments. Aydelotte's signs constituted political speech about Skykomish government and the relationship between Skykomish officials and Burlington Northern.

29.    On October 11, 2013, Grider sent Aydelotte a letter informing him that the signs on his property violated municipal codes and state laws.

30.    Later that month, the Town of Skykomish, by and through Descheemaeker, filed a complaint against Aydelotte, citing four violations. The Building Inspector's complaint asserted (1) that Aydelotte failed to clear the property where the fire had occurred; (2) that Aydelotte had signs on his property for which he lacked a permit; (3) that Aydelotte had

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

materials "on the asphalt of River Drive West in the right of way" impeding access, and (4) "NO TRESSPASSING" was painted "[o]n the asphalt on River Drive West." The compliant requested that Aydelotte fix each of the conditions mentioned.

31.    Upon information and belief, other residents of Skykomish erect and maintain signs on their property not unlike the signs that Aydelotte had. Such signs do not interfere with any public property or the rights of other individuals. Unlike Aydelotte, however, these other residents are not asked to remove their signs or threatened that the signs violate any laws.

32.    The effect of the Building Inspector's complaint was to refer to the Town Council a decision regarding Aydelotte's property. The Town Council issued an order on January 28, 2014, directing that demolition on Aydelotte's property be completed by March 30, 2014. For various reasons, Aydelotte did not accomplish the demolition of the burned structure on his property at this time.

33.    On April 23, 2014, Aydelotte applied for and received a demolition permit. Before he could go through with the planned demolition, the Town intervened. On June 13, 2014, Grider sent Aydelotte a letter stating that the Town itself would hire a licensed contractor and proceed with demolition on June 26, 2014, if Aydelotte did not do so.

34.    Aydelotte complied with that directive and demolished the burned structure. On July 8, 2014, Aydelotte sent a photograph of the demolition to Building Inspector Descheemaeker. Aydelotte requested approval to rebuild a new building on the foundation that remained, as the foundation itself had not been damaged by the fire and was suitable for a new structure. This was important to Aydelotte, as a new foundation would be extremely expensive.

35.    Without answering Aydelotte's application, the Town instead demolished Aydelotte's foundation. Aydelotte first leaned about the demolition around July 20, 2014, when he

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

returned to Skykomish for the town picnic.  Upon information and belief, Building Inspector Descheemaeker personally approved this demolition.

36.    In the course of demolishing the foundation on which Aydelotte had sought permission to rebuild a residence, the Town's demolition crew destroyed an elaborate stone wall that was part of the foundation, which Aydelotte had built himself in the early 1990s.  The stones for the wall were excavated from a nearby river, and Aydelotte spent the better part of a summer gathering the materials, researching, planning, and carefully constructing the wall.  In addition to the wall's emotional significance for Aydelotte, upon information and belief, the wall added to the value of his property as a unique and attractive feature.

37.    While the issues regarding Aydelotte's property were ongoing, Skykomish officials also retaliated against Aydelotte by harassing him with parking tickets and threats with respect to his vehicles.  On multiple occasions, Skykomish officials and employees ticketed and threatened to tow Aydelotte's vehicles on specious assertions that the vehicles were improperly parked.  However, Aydelotte's vehicles were parked on his personal property.  Accordingly, there was no basis for the citation of Aydelotte's vehicles, nor for the threat that they would be towed.  Grider was personally involved with ticketing Aydelotte's vehicles and calling tow trucks to his residence.  On at least one occasion, Grider threatened Aydelotte in connection with these traffic tickets, telling Aydelotte that he would "need to behave to continue to live there."

38.    Meanwhile, residents of properties neighboring Aydelotte's parked vehicles in the same manner as Aydelotte.  Unlike Aydelotte's truck, these neighbors' vehicles were not ticketed, and no one threatened to tow them away.

39.    Aydelotte has suffered various health issues as a result of the events described in the foregoing paragraphs.  The continued campaign of harassment and bullying was extremely

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

stressful, causing emotional pain, mental anguish, and loss of enjoyment of life for Aydelotte.

Aydelotte was diagnosed with post-traumatic stress disorder arising from the events at issue in

this case. He also suffered a hernia. Aydelotte has relocated away from Skykomish, but the

pain and emotional distress continue to impact his health and wellbeing.

**COUNT ONE**
**Violation of Civil Rights – 42 U.S.C. § 1983**
**Against Grider and Descheemaeker**

40.     Aydelotte adopts and re-alleges each and every allegation contained in this Complaint

as if set out anew herein.

41.     Aydelotte engaged in constitutionally protected speech by expressing his political views

regarding Town of Skykomish officials and their activities and petitioning the government

regarding financial disclosures and other ethical issues arising from these officials' relationship

with Burlington Northern. These speech activities involved matters of public concern.

42.     As set forth above, the Individual Defendants intentionally, maliciously, and willfully

retaliated against Aydelotte for his protected speech activity. Aydelotte's speech activity

motivated the Individual Defendants' mistreatment of Aydelotte, as demonstrated by the

comments by Skykomish officials about Aydelotte's First Amendment activities and their

actions against Aydelotte with respect to the political signs on his property.

43.     These events of retaliation, taken together, are enough to dissuade a reasonable person

from engaging in protected First Amendment activity.

44.     As a proximate consequence of the Individual Defendants' retaliation, Aydelotte has

suffered and will continue to suffer monetary loss from the destruction of his property, as well

as emotional pain, stress, mental anguish, loss of enjoyment of life, and physical effects

associated with the emotional and mental stress of this retaliation.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

45.    Aydelotte left Skykomish as a result of the retaliation.  Although Aydelotte has relocated, he continues to suffer the ill effects of the abuse and retaliation by the Individual Defendants

**COUNT TWO**
**Violation of Civil Rights – 42 U.S.C. § 1983**
**Monell Claim Against Town of Skykomish**

46.    Aydelotte adopts and re-alleges each and every allegation contained in this Complaint as if set out anew herein.

47.    Aydelotte engaged in constitutionally protected speech by expressing his political views and petitioning the government.  These speech activities involved matters of public concern and are protected under the First Amendment.

48.    The Town of Skykomish, through the actions of top decision-makers Grider and Descheemaeker, retaliated against Aydelotte for his protected speech, as set forth in detail above.  This continued Skykomish's pattern of retaliation by various Skykomish officials during the tenures of previous mayors Mackner and Black, also the top decision-makers during their time in office.

49.    The repeated actions of Skykomish officials against Aydelotte constitute a pattern of mistreatment in retaliation for Aydelotte's speech activity, in violation of Aydelotte's First Amendment rights.  As alleged above, the actions of Skykomish officials were sufficient to deter a reasonable person from engaging in protected First Amendment activity.

50.    As alleged above, Aydelotte suffered and continues to suffer monetary loss as well as emotional pain, stress, mental anguish, loss of enjoyment of life, and physical effects associated with the emotional and mental stress of this retaliation.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## **PRAYER**

WHEREFORE, Aydelotte seeks damages as follows:

(1) General compensatory damages – in an amount to be proven at trial;

(2) Punitive damages against the Individual Defendants, for their outrageous, malicious and intentional conduct;

(3) Injunctive relief – preventing Defendants from further retaliatory action against Aydelotte, including with respect to property that he continues to own in Skykomish; and

(4) Attorneys' fees and costs pursuant to 42 U.S.C. § 1983.

DATED this 30th day of July, 2019.

Davis Wright Tremaine LLP
*Attorneys for George R. Aydelotte*

By /s/ *James Howard*
James E. Howard, WSBA No. 37259
MaryAnn T. Almeida, WSBA No. 49086
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
Telephone: (206) 622-3150
Fax: (206) 757-7700
E-mail: jimhoward@dwt.com
          maryannalmeida@dwt.com

AMENDED COMPLAINT - 13
(Case No. 2:14-cv-00307-MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**CERTIFICATE OF SERVICE**

      I hereby certify that on July 30, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

      DATED this 30th day of July, 2019.

                               */s/ James Howard*
                               James E. Howard, WSBA No. 37259

AMENDED COMPLAINT - 14
(Case No. 2:14-cv-00307-MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax