UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GEORGE R AYDELOTTE,<br><br>Plaintiff,<br><br>v.<br><br>TOWN OF SKYKOMISH, et al.,<br><br>Defendants. | CASE NO. C14-307 MJP<br><br>ORDER DENYING MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant Mike Descheemaeker's Motion for Summary Judgment (Dkt. No. 91). Having reviewed the Motion, the Responses (Dkt. Nos. 98, 113), the Replies (Dkt. Nos. 105, 115) and all related papers, the Court DENIES the Motion.

**Background**

**A. BNSF Settlement**

Until shortly after he filed this lawsuit, Plaintiff George Aydelotte was a resident of the Town of Skykomish, Washington. He alleges that in response to his activism against kickbacks and corruption stemming from the Town's settlement with Bulington Northern Santa Fe Railroad

1  ("BNSF"), several officials conducted a retaliation campaign against him and eventually ran him
2  out of Town.

3  In 1991 the Washington Department of Ecology BNSF's Maintenance and Fueling
4  Facility in Skykomish on its Hazardous Site list because of petroleum contamination, with a
5  concern rank of one, a high priority. Aydelotte v. Town of Skykomish et al. No. 08-2-28689-4,
6  at 2-3 (King Co. Sup. Ct. Mar. 16, 2011) ("Superior Ct. Case"). After years of negotiations over
7  cleaning the site with the Department, BNSF also began negotiating a settlement with the Town
8  of Skykomish, while simultaneously making confidential payments to several Town officials.
9  Upon learning of these secret payments, Plaintiff filed a petition with the Washington State
10 Public Disclosure Commission and a pro se lawsuit in King County Superior Court. (Dkt. No.
11 100, Declaration of James Howard ("Howard Decl."), Ex. B); Superior Ct. Case. Plaintiff won
12 the Superior Court case, with the court finding the settlement agreement null and void and that
13 Town officials had violated ethics codes. Superior Court Case at 5.

14 Plaintiff alleges that immediately after the court's ruling, town officials began a
15 campaign of retaliation against him. For example, at the first Town Council meeting after the
16 order, Town Councilmember Darrell Joselyn looked at Plaintiff and said, "there will be a lot of
17 flat tires" in Skykomish. (Howard Decl. Ex. C at 2; Dkt. No. 99, Declaration of Rick Aydelotte
18 ("Aydelotte Decl."), ¶ 2.) Plaintiff understood this threat to mean that he should stop seeking
19 public disclosures; following this statement, Plaintiff had four tires slashed. (Howard Decl., Ex.
20 D ("Aydelotte Tr.") at 17:20-25, 18:3-12; Aydelotte Decl. ¶ 3.).) Plaintiff also alleges that town
21 officials destroyed his dinghy, demolished his shed, and officials' family members physically
22 attacked him. (Howard Decl., Ex. C at 2; Aydelotte Decl. ¶ 3.)
23 //
24

**B. Defendant Descheemaeker**

According to Plaintiff, Defendant Descheemaeker played a significant part in this retaliation campaign. On several occasions, he threatened Plaintiff, telling him that he would be would "be driven from town" and that he was "going to fuck with" Plaintiff because he was angry that Plaintiff had sued his friends, and explaining "there was no way [Plaintiff] was going to ever get a building permit in Skykomish." (Aydelotte Tr. at 82:14-19; Aydelotte Decl. ¶ 4.) He also warned Plaintiff that he would be treated exactly like Dieter Benz, a Skykomish resident who was denied building permits to repair the historical hotel he owned and who eventually left Skykomish. (Aydelotte Decl. ¶ 4.) In his deposition, Mr. Descheemaeker acknowledged the comparison:

> [I]f [Plaintiff] was going to make his building the object of this protest fight that he's doing, then we were going to have to pursue the avenue that we did in order to bring his unsafe structure into compliance with the Skykomish municipal code . . . which is what we had to do with D[i]eter Benz because he also decided to use his building as a political point to basically waste the town's money and time to try to make some sort of point of his own.

(Descheemaeker Tr. at 108:7-16.)

In August 2013, Mr. Descheemaeker appeared at Plaintiff's home, unannounced, to discuss a structure on Plaintiff's property that had been destroyed by a fire several years earlier. (Id. ¶ 6; Howard Decl., Ex. J.) Mr. Descheemaeker issued a Building Inspector's Complaint against Plaintiff, which required Plaintiff to obtain a permit to demolish the burnt structure. (Aydelotte Decl. ¶ 6.) This was only the second Inspector's Complaint Mr. Descheemaeker issued in his years as an inspector, the other one against Dieter Benz, the hotel owner who "also decided to use his building as a political point." (Descheemaeker Tr. at 108:7-16.)

The Inspector's Complaint also cited Plaintiff for posting "a number of spray-painted signs upon structures" on Plaintiff's property. (Howard Decl., Ex. J at 3.) Mr. Descheemaeker

1   described these signs as Plaintiff's "Town of Skykomish political rantings" that were "offensive
2   to the community and to the eyes of the neighborhood." (Descheemaeker Tr. at 56:4-12.) At the
3   hearing on the Inspector's Complaint, which was open to the public, Plaintiff was locked out of
4   the building and forced to wait outside while Mr. Descheemaeker adjudicated the citations he
5   had issued. (Aydelotte Tr. at 65:23-66:12.) Mr. Descheemaeker then issued an order that
6   required Plaintiff to demolish the burnt structure on his property. (Howard Decl., Ex. L at 7.)

7   In response to the order, Plaintiff took down the structure, cleaned the surrounding area,
8   and arranged a meeting with Mr. Descheemaeker to have a site inspection. (Aydelotte Decl. ¶ 8;
9   Aydelotte Tr. at 24:14-16.) But when Plaintiff returned from a brief vacation, he found that his
10  stone foundation had been demolished and all the building materials were gone. (Aydelotte Tr.
11  at 24:20-25:5.) Mr. Descheemaeker admits he had some involvement in the demolition. (Id. at
12  87:9-10, 104:14-16.)

13  On July 30, 2019 Plaintiff filed an amended complaint against Mr. Descheemaeker,
14  alleging a 42 U.S.C. § 1983 claim for retaliation in violation of his civil rights against
15  Descheemaeker and Mayor Tony Grider and a Monell claim against the Town of Skykomish.
16  (Dkt. No. 75.) Mr. Descheemaeker now brings a motion for summary judgment, arguing that (1)
17  Plaintiff's claims against him violate the Statute of Limitations; (2) Plaintiff lacks sufficient
18  evidence to support his retaliation claim; and (3) Mr. Descheemaeker is entitled to qualified
19  immunity.

**Discussion**

21  Summary judgment is proper where "the movant shows that there is no genuine issue as
22  to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.
23  56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue
24

of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To defeat a motion for summary judgment, the non-movant must point to facts supported by the record which demonstrate a genuine issue of material fact. Lujan v. National Wildlife Foundation, 497 U.S. 871, 888 (1990). Conclusory, non-specific statements are not sufficient. Id. at 889. Similarly, "a party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda." S.A. Empresa v. Walter Kidde & Co., 690 F.2d 1235, 1238 (9th Cir. 1982).

**A.  Statute of Limitations**

Defendant first argues that Plaintiff's claim violates the Statute of Limitations, putting forth an argument the Court rejected last year and asking the Court to ignore its previous ruling, which is now the law of the case.

Plaintiff filed this action pro se in March 2014, naming Mike Descheemaeker in his original Complaint, but failing to serve Mr. Descheemaeker and several other Defendants. (Dkt. No. 1 ("Compl."); Dkt. No. 36 at 14; Dkt. No. 40 at 6-7.) Nevertheless, Mr. Descheemaeker answered the Complaint (Dkt. No. 33), and participated in Defendants' motions, including Defendants' Motion to Dismiss (Dkt. No. 18) and Motion for Summary Judgment (Dkt. No. 34). (Dkt. No. 40 at 6-7.) On October 13, 2015, Plaintiff's claims against all Defendants were dismissed and Plaintiff appealed. More than three years later, the Ninth Circuit issued its opinion, reversing in part and remanding. (See Dkt. No. 54.)

Upon remand, Plaintiff moved to join Mr. Descheemaeker under Federal Rule of Civil Procedure 20(a)(2) because he was personally involved in many of the key events giving rise to this suit. (Dkt. No. 68.) When Defendant argued that claims against Mr. Descheemaeker were time-barred, Plaintiff asked the Court to equitably toll the statute of limitations, and the Court

1  granted the motion.  (Id.; Dkt. No. 74 at 4.)  Mr. Descheemaeker did not move for

2  reconsideration of the Court's order.

3        Now Mr. Descheemaeker is once again arguing that Plaintiff's claim violates the Statute

4  of Limitations and that Plaintiff has failed to demonstrate the necessary requisites to toll the

5  Statute.  (Dkt. No. 91 at 4.)  But the Court addressed this argument nearly a year ago when it

6  noted that in Washington, the availability of equitable tolling is no longer limited to

7  circumstances "'where one of the predicates of bad faith, deception, and false assurances [i]s

8  shown.'"  Putz v. Golden, 847 F. Supp. 2d 1273, 1284 (W.D. Wash. 2012) (quoting In re Pers.

9  Restraint of Carter, 172 Wn.2d 917 (2011)).

10        In asking the Court to ignore its previous ruling, Mr. Descheemaeker argues that Plaintiff

11  must establish these prerequisites, citing two unpublished cases as support: State v. Howerton,

12  No. 74856-4-I, 2017 WL 5665662, at *4-5 (Wash. Ct. App. Nov. 27, 2017), where the court

13  cited the prerequisites of "'bad faith, deception, or false assurances by the defendant[ ] and the

14  exercise of diligence by the plaintiff,'" but went on to analyze the petitioner's arguments

15  exclusively based on diligence, and Erickson v. Serpas, 478 F.Ed. Appx. 368, 370 (9th Cir.

16  2012), where the court notes that "[t]he current predicates for equitable tolling in civil cases

17  under Washington law are not clear," and relies on the appellant's lack of diligence to uphold the

18  district court's decision not to toll the Statute of Limitations.

19        Even if these unpublished cases were precedential, they stand for the proposition that

20  Plaintiff must demonstrate diligence, something the Court addressed in its previous Order, noting

21  that Plaintiff pursued his claims against Mr. Descheemaeker from the beginning of this action,

22  "naming him in the original Complaint, putting him on notice of the claims against him and

23  affording him the opportunity to defend himself; and Mr. Descheemaeker took full advantage of

24


this opportunity, participating in each of Defendants' filings until he was ultimately dismissed." (Dkt. No. 74 at 4.) Finding Defendant's argument procedurally improper and unpersuasive, the Court declines to revisit its ruling that Plaintiff's claim against Mr. Descheemaeker is within the Statute of Limitations.

### B. Sufficient Evidence

Mr. Descheemaeker next argues that Plaintiff does not have sufficient evidence to support his retaliation claim. To prevail on a First Amendment retaliation claim, the Plaintiff must show (1) constitutionally protected speech, (2) the defendant engaged in acts that would "chill a person of ordinary firmness from continuing to engage in the protected activity," and (3) the defendant acted with the motive of chilling speech. Blair v. Bethel Sch. Dist., 608 F.3d 540, 543 (9th Cir. 2010).

Here, the Ninth Circuit found that "Aydelotte engaged in constitutionally protected speech when he criticized Skykomish officials and filed a complaint in the Washington Public Disclosure Commission." Aydelotte v. Town of Skykomish, 757 F. App'x 582, 584 (9th Cir. 2018). Further, while ruling on whether the district court appropriately dismissed Mayor Grider, the Ninth Circuit found that his "litany of actions against Aydelotte" would "chill a person of ordinary firmness from continuing to speak out." Id. Many of these actions were in fact carried out by Mr. Descheemaeker, including his citation of Plaintiff's signs protesting the Skykomish government. Id. The court also cited Mayor Grider's threats that Plaintiff "would need to behave to continue to live there." Id. at 585. Mr. Deeschemaeker took similar actions, threatening that Plaintiff would "be driven from town" like Dieter Benz. (Aydelotte Tr. at 82:14-19; Aydelotte Decl. ¶ 4.)

1     Finally, Mr. Descheemaeker recently testified that he found Plaintiff's "political rantings" "offensive to the community and to the eyes of the neighborhood," allowing any reasonable fact-finder to find that when he cited Plaintiff for his signs he acted with the motive of chilling speech, the third of the three elements Plaintiff must establish to prove his claim. Blair, 608 F.3d at 543.

    But Defendant argues that because Plaintiff's property was in violation of Skykomish's Nuisance Ordinance, Mr. Descheemaeker was required to issue a citation and therefore Plaintiff's political statements and any opinions Mr. Descheemaeker had about them are irrelevant. (Dkt. No. 115 at 3.) It is as if Defendant has not read the Ninth Circuit opinion in this matter, where the court held:

> [T]he district court erred in concluding that Mayor Grider's actions with respect to Aydelotte's signs could not be considered First Amendment retaliation because the signs '[ran] afoul of the Skykomish sign code.' Whether there has been First Amendment retaliation does not depend on whether Mayor Grider's actions were lawful or permissible, but rather on whether Aydelotte's protected speech was a 'substantial or motivating factor' for Mayor Grider's actions.

Aydelotte, 757 F.App'x at 584 n.1 (citations omitted). Based on the Ninth Circuit's ruling in this matter and on the evidence in the record, a reasonable fact-finder could conclude that Plaintiff has established the elements of his retaliation claim.

**C. Qualified Immunity**

Defendant also argues he is entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). As discussed supra, Plaintiff has demonstrated a violation of his constitutional right to free speech. The Court therefore must determine "whether the right


at issue was 'clearly established' at the time of defendant's alleged misconduct." Pearson, 555 U.S. at 232 (citations omitted).

The right to speak freely without retaliation has long been clearly established for the purposes of qualified immunity. Gibson v. United States, 781 F.2d 1334, 1338 (9th Cir. 1986) ("State action designed to retaliate against and chill political expression strikes at the heart of the First Amendment."). And the Ninth Circuit addressed this issue when denying Mayor Grider qualified immunity, concluding "that Aydelotte's right to be free from a campaign of harassment and humiliation in retaliation for constitutionally protected speech was clearly established." Aydelotte, 757 F. App'x at 583-84. Mr. Descheemaeker is not eligible for qualified immunity in this case.

**Conclusion**

The Court finds that Defendant has done very little to support his motion, especially in the face of the ruling from the Ninth Circuit finding that, if true, Plaintiff's allegations amounted to an unconstitutional campaign of retaliation and harassment. And Defendant's deposition provided additional support for Plaintiff's claims when he admitted that he found Plaintiff's "political rantings" "offensive." Defendant's Motion for Summary Judgment is DENIED.

The clerk is ordered to provide copies of this order to all counsel.

Dated July 29, 2020.

                                        Marsha J. Pechman
                                        United States Senior District Judge